Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000635
15-NOV-2019
07:55 AM

NO. CAAP-18-0000635

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
CAFFERY TODD SHEATHER, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1PC161000184)


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Chan and Hiraoka, JJ.)

Defendant-Appellant Caffery Todd Sheather (**Sheather**) was convicted by a jury on two counts of Sexual Assault in the Third Degree in violation of HRS § 707-732(1)(b) (2014)[1]. He appeals from the orders of the Circuit Court of the First Circuit (a) denying his motion to dismiss the indictment, (b) denying his motion to compel discovery or in the alternative to dismiss the indictment, and (c) denying his oral motion for mistrial. For the reasons explained below, we affirm the Judgment of Conviction and Sentence entered on July 17, 2018.

**I.**

On February 3, 2016, Sheather was indicted on three counts of Sexual Assault in the Third Degree. Sheather moved to

---

[1]    HRS §707-732(1)(b) provides:

   A person commits the offense of sexual assault
   in the third degree if . . . [t]he person knowingly
   subjects to sexual contact another person who is less
   than fourteen years old or causes such a person to
   have sexual contact with the person[.]

dismiss the indictment. The circuit court denied the motion.[2]
Sheather moved to compel discovery from the State. The circuit
court denied the motion.[3] Jury trial began on April 23, 2018.[4]
On April 25, 2018, Sheather moved for a mistrial. The circuit
court denied the motion. On April 26, 2018, the jury found
Sheather guilty on two of the counts. He was sentenced to two
five-year terms of incarceration, to run concurrently. This
appeal followed.

## II.

### A.    Motion to Dismiss

A trial court's ruling on a motion to dismiss an
indictment is reviewed for abuse of discretion. State v. Chong,
86 Hawai'i 282, 288 n.2, 949 P.2d 122, 128 n.2 (1997).

Sheather contends that the circuit court abused its
discretion by denying his motion to dismiss the indictment
because the State failed to present clearly exculpatory evidence
to the grand jury. "[W]here evidence of a clearly exculpatory
nature is known to the prosecution, such evidence must be
presented to the grand jury." State v. Bell, 60 Haw. 241, 245,
589 P.2d 517, 520 (1978) (citation omitted).[5]

---

[2]    The Honorable Dean E. Ochiai presided. During the hearing on
Sheather's motion to dismiss, the circuit court announced its decision and
directed the State to prepare a written order denying the motion. The record
on appeal does not contain a written order.

[3]    The circuit court's minutes of the hearing on Sheather's motion to
compel discovery indicate that the circuit court directed the State to prepare
a written order denying the motion. The record on appeal does not contain a
written order.

[4]    The Honorable Todd W. Eddins presided.

[5]    The Bell court stated:

> Clearly exculpatory evidence may be manifested,
> for example, by a witness whose testimony is not
> directly contradicted by any other witness and
> who maintains that the accused was nowhere near
> the scene of the crime when it occurred. Also,
> where it has become apparent to the prosecution,
> for example, that a sole eyewitness testifying
> as to the perpetration of the crime has perjured

(continued...)

In this case, the 11-year-old complaining witness (**CW**) testified before the grand jury. She was to spend the weekend with her school friend **JS** and JS's family. Sheather is JS's father. CW and JS shared a bedroom. After CW went to sleep, she was awakened by Sheather touching her vagina with his finger, both over and under her underwear. He was kneeling on the ground next to CW's bed. She pretended to be asleep, because she did not want Sheather to know that she knew what he was doing. She rolled away from him and pretended to stretch, and he tapped her and asked her if she was having a bad dream. He walked out of the room. He returned, and again touched her vagina with his finger, both over and under her underwear. She rolled away again, and stretched and made sleeping noises. She thought Sheather left, but when she peeked she saw him "on all fours, like, trying to hide . . . trying to crawl under a table." He woke her up, asked her if she was having a bad dream, and hugged her. CW testified that when Sheather hugged her, "he grabbed my butt."

Sheather contends that the clearly exculpatory evidence that should have been presented to the grand jury was testimony from JS, who was also eleven years old. JS gave a statement to a police detective. She said that she and CW went to sleep at 11:00 or 11:30. At about 4:00, CW started kicking off her blanket and mumbling in her sleep. This woke JS up. Her father (Sheather) came into the room and tried to calm CW down. She and CW went back to sleep.

At the hearing on Sheather's motion to dismiss, the circuit court stated:

> In looking at the totality of the evidence presented before the Court, and mainly the exhibits which are A, the Grand Jury transcript . . . .
>
> As well as Defense Exhibit B, which is a taped interview of the other minor female witness in the room[.]

---

[5] (...continued)
himself before the grand jury, that perjury must be revealed to the grand jury.

60 Haw. at 245, 589 P.2d at 520.

. . . .

Court makes specific findings as follows:

1.     The testimony, or the lack of testimony, at Grand Jury by witness JS is not clearly exculpatory.

2.     The Court finds no misconduct on the part of the prosecution in its presentation of its case to the Grand Jury.

And since there was not any clearly exculpatory evidence to be presented to the Grand Jury, they were not obligated to present merely conflicting testimony.

That being the Court's ruling, Court will deny the motion to dismiss the indictment.

We hold that the circuit court did not abuse its discretion and correctly applied the law.

The Hawaiʻi Supreme Court has stated:

> The function of a grand jury to protect against unwarranted prosecution does not entail a duty to weigh the prosecution's case against that of the defense, or even to determine that the prosecution's case is supported by competent evidence.
>
> On the other hand, an indictment that is the result of prosecutorial misconduct or other circumstances which prevent the exercise of fairness and impartiality by the grand jury may be successfully attacked.

Chong, 86 Hawaiʻi at 289, 949 P.2d at 129 (cleaned up) (quoting, expressly approving, and adopting Justice Kidwell's concurrence in Bell, 60 Haw. at 256-57, 589 P.2d at 526). Accordingly, "evidence should be considered clearly exculpatory . . . only when the prosecution could not in good faith rely on other evidence." Bell, 60 Haw. at 257, 589 P.2d at 527 (Kidwell, J., concurring). The State in this case relied upon the testimony of CW to obtain the indictment. The State had no obligation to offer conflicting testimony from JS to the grand jury.

### B.    Motion to Compel Discovery

The circuit court's discovery orders are reviewed for abuse of discretion. State v. Fukusaku, 85 Hawaiʻi 462, 477-78, 946 P.2d 32, 47-48 (1997).

Sheather contends that the State failed to turn over a recording of a conversation between a Children's Justice Center

4

employee named Nancy Tolentino and a Honolulu police detective named Darrien Thornley "in which they discussed their doubt as to the complaining witness's veracity in her [Children's Justice Center] interview." The alleged recording is not part of the record on appeal. The minutes of the January 4, 2017 hearing indicate that Tolentino and Detective Thornley were both called as defense witnesses. After their testimony, the minutes indicate "defense recognizes that there is nothing to compel. The court stated that the State made complete discovery to the defense. Defense [sic] was given a chance to put on his witnesses to see if there was any further discovery." The transcript of the January 4, 2017 hearing is not part of the record on appeal, but the minutes indicate that the circuit court denied the motion to compel.[6] We hold that the circuit court did not abuse its discretion because, based upon the record before us, the evidence sought by Sheather did not exist.

### C.  Motion for Mistrial

The denial of a motion for mistrial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion. State v. Pasene, 144 Hawai'i 339, 365, 439 P.3d 864, 890 (2019).

CW's father (**Father**) testified at trial. In response to questions by the State, he testified that the morning after the alleged incident, he and CW's mother (**Mother**) took CW to CW's pediatrician. Father waited in the waiting area while Mother and CW met with the pediatrician. A female police officer arrived and took Father's statement. Father and the police officer then went into the pediatrician's office. Father testified:

> Q. And were you there when [CW] came to interact with the officers?
>
> A. I was, yes.
>
> Q. And did you notice [CW]'s demeanor when she came to interact with the officers?
>
> A. Yes, [CW]'s demeanor changed quite dramatically when we entered [the pediatrician]'s

---

[6]  Again, the record on appeal contains no written order.

office. And when she talked to the police officer, she became very emotional, started crying. I believe at one point she kind of buried herself into my chest and just didn't want to talk about it. So that's when -- that was the first time I saw her react to the situation was when we were at [the pediatrician]'s office, and specifically I noticed that when she was -- when the female police officer was talking to her about the specifics.

Q. So you said a little earlier that you could -- you know your daughter --

A. Uh-huh.

Q. -- her demeanor?

Did you notice a change in [CW]'s demeanor after this happened?

A. Yes. [CW] is a, prior to this event, fairly outgoing person.

[DEFENSE COUNSEL]: I'm going to object, Your Honor, to relevance. And if we need to approach for my specific objection, I would request that we be allowed to do that.

THE COURT: Your objection's overruled and your request is denied.

BY [DEPUTY PROSECUTING ATTORNEY]:

Q. You may answer the question.

A. Her demeanor prior to -- was very different. Outgoing young woman, slept pretty well, was comfortable around lots of people, had certainly spent time -- times with the Sheather family almost immediately after this event and continued to this day --

THE COURT: Okay. Let me -- hold on here.

Counsel, if you could approach.

. . . .

(Bench discussion on the record.)

THE COURT: We're up at the bench outside of the presence of the jury.

My impression of that question it was going to generate a response with respect to her demeanor that day at the doctor's office and how it transformed. This is getting into almost a postevent manifestation behavior. [State], what's your position?

And [Defense Counsel], why don't you put your position on first.

(Underscoring added.) Sheather's attorney objected to relevance and "lack of foundation that a change in behavior is either consistent or inconsistent with a report of sexual abuse." The

circuit court agreed and said it would strike the response. Sheather's attorney asked the circuit court to declare a mistrial.  The court responded:

> THE COURT:  . . . The striking of the testimony, the jury will be ordered to disregard the testimony should be sufficient. . . . That'll be emphasized in the jury instruction as well, and I trust they will follow this instruction.
>
> . . . .
>
> (Bench conference concluded.)
>
> THE COURT: With regard to the last question posed by the prosecution and the response by [Father], that question and response is stricken and you are to disregard that.  You are not to consider the question or the answer at all in your consideration [sic].

The jury was instructed:

> You must decide the case solely on the evidence and the law.  You must not be influenced by any personal likes or dislikes, prejudice, passion, pity, or sympathy.  The oath that you took at the beginning of the case demands of you a just verdict, unaffected by anything except the evidence, your reason and common sense, and the law as I give it to you.
>
> . . . .
>
> Objections are not evidence.  Attorneys may object when they believe an objection is appropriate. You should not be influenced by the question, objection, or by my ruling on the matter.  If an objection was sustained, you must disregard the question and any answer that may have been given.

Sheather's only trial objection was to relevance.  He argues, for the first time on appeal, prosecutorial misconduct. "If defense counsel does not object at trial to prosecutorial misconduct, this court may nevertheless recognize such misconduct if plainly erroneous."  State v. Wakisaka, 102 Hawai'i 504, 513, 78 P.3d 317, 326 (2003).  "We will not overturn a defendant's conviction on the basis of plainly erroneous prosecutorial misconduct, however, unless there is a reasonable possibility that the misconduct complained of might have contributed to the conviction."  Id. (cleaned up); see also Pasene, 144 Hawai'i at 365, 439 P.3d at 890 ("Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of whether there is a reasonable possibility that

the error complained of might have contributed to the conviction.") (citations omitted). In reaching this determination, we consider the following factors: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant. Pasene, 144 Hawai'i at 365, 439 P.3d at 890.

"Under the first factor, we consider the nature of the challenged conduct in relation to our criminal justice system generally and the special role of the prosecutor specifically." Pasene, 144 Hawai'i at 365, 439 P.3d at 890 (cleaned up). In this case, Sheather did not object to relevance when the prosecutor asked Father about [CW's] demeanor when she met with the police officer at the pediatrician's office. There was no motion to strike Father's response that "[CW]'s demeanor changed quite dramatically" when Father and the police officer entered the pediatrician's office, and CW "became very emotional, started crying . . . she kind of buried herself into my chest and just didn't want to talk about it." When the prosecutor asked the follow-up question, "Did you notice a change in [CW]'s demeanor after this happened?" the circuit court's "impression of that question [was] it was going to generate a response with respect to [CW's] demeanor that day at the doctor's office and how it transformed." It was not until after Father started answering the question that Sheather objected. The prosecutor's conduct was not egregious.

Under the second factor, after the circuit court overruled Sheather's objection and Father began describing a change in CW's personality, the court immediately called a bench conference, struck the question and Father's testimony, gave a curative instruction to the jury, and reiterated the curative instruction while instructing the jury on the law. The first curative instruction was prompt, and the curative jury instruction reinforced the first instruction.

Under the third factor, the evidence against Sheather was strong. CW's trial testimony was consistent with her grand jury testimony. JS also testified at trial; she did not remember

much about the incident, but she was asked by the State about her interview at the prosecutor's office:

> [BY DPA]: . . . Do you remember doing that interview --
>
> A. Yes.
>
> Q. -- at my office saying that later that morning you woke up because [CW] was having a nightmare, and when you look toward [CW], you saw your father kneeling or standing next to [CW]'s bed?  Do you remember saying that in that interview?
>
> A. Yes.

On redirect, JS testified:

> [BY DPA]: Okay.  And when I asked you about the meeting that we had with our investigator or with the people from my office, you said that you do remember telling our investigator that day that, when you woke up and looked, you saw your dad standing or kneeling right by [CW]'s bed, you remember that, right?
>
> A. Yes.
>
> Q. And that you said today that you do remember saying?
>
> A. Yes.

CW's pediatrician also testified at the trial.  CW had been her patient since CW was born.  Mother brought CW in to her office the morning after the incident:

> [BY DPA]: And can you describe what [CW]'s behavior or demeanor was like when you first observed her that day?
>
> A. When she first came in to the office and I greeted her, she seemed withdrawn, probably a little fearful, hiding behind her mom a little bit.
>
> Q. Okay. And at some point did you, I guess, focus your attention on [CW] and talk to [CW]?
>
> A. Yes.
>
> Q. And can you just tell us a little bit about that?
>
> A. Well, routinely, when a child comes in, I'll always greet them, ask them how they're doing and why they're there in the office.  So that day was same thing.  "Hi, sweetie, how are you?"  She said, "Fine." And then I asked her, "Why are you here today?"  And she started crying.
>
> . . . .

Q. . . . What did she say had happened that caused her to be there that day?

A. So she said that she had been invited to a birthday party for her best friend and it was a sleepover at the Koʻolina Hotel. In the middle of the night, her uncle -- she awoke to her uncle stroking her thigh and she stopped talking, and then I asked her if he touched any other places on her body. And at first she was reluctant to answer, so I drew a picture of her private area. She indicated her private area. And I drew a picture of a -- a general picture of a female anatomy and I asked her to point if he had touched her in any other places, and she pointed to her vagina. And then I asked her if it was over her panties or under, and she stated it was under. And then -- and then I examined her. And, generally, when I examine a child, I'll do the whole examination -- head, ears, everything. And I told her since we were concerned about her private areas, I would have to examine her privates. So I stepped out while she undressed and was draped, and then I examined her privates.

Because the deputy prosecuting attorney's conduct was not egregious, because the circuit court promptly gave a curative instruction and later gave an appropriate jury instruction, and because of the strength of the evidence against Sheather, we decline to recognize plain error in the circuit court's denial of Sheather's motion for a mistrial.

## III.

For the foregoing reasons, we affirm the Judgment of Conviction and Sentence entered by the circuit court on July 17, 2018.

DATED: Honolulu, Hawaiʻi, November 15, 2019.

On the briefs:

Jacob G. Delaplane,
for Defendant-Appellant.

Dwight K. Nadamoto,
Brian R. Vincent,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Keith K. Hiraoka

Associate Judge